# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § | |
| VS. | § § § § | CASE NO. 9:10cr13 |
| BYRON GARRETT | § | |

## REPORT AND RECOMMENDATION
## TO UNCONDITIONALLY DISCHARGE DEFENDANT

On January 5, 2017, the undersigned magistrate judge conducted a hearing pursuant to 18 U.S.C. § 4243(f) to determine whether the Defendant, Byron Garrett, should be unconditionally released from custody following his plea of not guilty by reason of insanity.

## I. BACKGROUND

After a bench trial on January 7, 2011, the Honorable Chief Judge Ron Clark concluded that Defendant Byron Garrett was not guilty by reason of insanity, and ordered that Garrett be evaluated at the Burke Center in accordance with 18 U.S.C. § 4243(b) to determine whether Mr. Garrett met the requirements under Section 4243(f) for either unconditional or conditional release. (Dkt. No. 32.) After reviewing the report of the evaluating psychologist and holding a hearing, at which the Government indicated that it agreed with the psychologist's assessment, Judge Clark ordered that Garrett be conditionally discharged under the following prescribed regimen of care:

1. Continue on medication he is currently prescribed, which may be modified in the future by his healthcare provider;

2. Receive regular follow-up services and medication management through the Burke Center;

>     3.      Continue to see his therapist until she believes his overall treatment goals have been attained; and
>
>     4.      If Mr. Garrett stops taking his medication or reporting to his therapist, his mother Gladys Garrett and/or Uncle James McCraw shall notify the Burke Center and his therapist as soon as possible.

(Dkt. No. 35). On January 7, 2015, this case was transferred to the Honorable Michael H. Schneider. (Dkt. No. 36.) On September 13, 2016, this case was reassigned to Judge Clark. (Dkt. No. 38.) Garrett began receiving outpatient treatment at the Burke Center in March 2011, pursuant to his conditions of discharge. Garrett was last seen at the Burke Center in April 2014, and The Burke Center has since closed Garrett out of its system. (Dkt. No. 39.)

Therefore, Judge Clark ordered the Government to file a report by October 26, 2016, stating whether the government intends to pursue a warrant or summons for Garrett's arrest, or whether the government believes that he should be unconditionally released and that this case should be closed. The Government filed an *ex parte* request asking that the Court issue a summons for Garrett and order that he be evaluated by a psychologist or psychiatrist so that a determination can be made as to his current mental condition. (Dkt. No. 40.) The Government conceded that if the examination reveals that Garrett no longer requires mental health treatment, Garrett could be unconditionally discharged and the case be closed.

On November 5, 2016, the undersigned held a hearing on this matter. Garrett was appointed legal counsel, and ordered to undergo a psychiatric examination.

On December 8, 2016, Garrett's evaluating physician, Joseph Kartye, Ph.D., submitted a report to the court. (Dkt. No. 48.) Dr. Kartye has performed four examinations on Mr. Garrett: two separate evaluations on August 3, 2010 (one for competency and one for sanity/insanity), on March 7, 2011, to assess his potential for future dangerousness, and on December 1, 2016 to determine whether Mr.

Garrett's unconditional release from court supervision would create a substantial risk of bodily injury to another person or serious damage to property of others.

## II. MEDICAL FINDINGS

In the latest report, dated December 1, 2016, Dr. Kartye concludes that Garrett "has made a complete recovery from his mental illness," and recommends that the Court give him an unconditional release. Dr. Kartye elaborated:

> [Garrett] has not been on medication for approximately two years and psychotherapy was terminated in 2011. There have been no recurring symptoms of his mental illness (delusions, command hallucinations, hearing voices) from then until the present time. In the meantime, since he has been off his medications he has coped well with a number of stressors without having a relapse. He successfully coped with the rigors of completing a vocational program in diesel mechanics at Angelina College, moved to Texas City and sought employment in his area of training and when unable to secure a job in that field, obtained employment as a warehouse worker. When his health condition deteriorated due to complications of diabetes, he moved back to Lufkin and took the necessary steps to bring his diabetes under control. The fact that he successfully dealt with these stressors without having a psychiatric crisis, suggests that he can also effectively manage future stresses in his life.

(Dkt. No. 48, p.7.) Dr. Kartye reported that he examined twenty-four historical risk factors that would increase Garrett's propensity for violence. Some of these factors include a history of violence, early initiation of violence, exposure to violence in the home, and parental criminality in the home. Dr. Kartye determined that none of the twenty-four historical risk factors for violence were present. He also analyzed the social/contextual risk factors such as Garrett's history of delinquent behavior, association with known criminals, peer rejections, and lack of personal/social support. Again, Dr. Kartye found that none of these risk factors were present. Similarly, Dr. Kartye examined individual risk factors, including, *inter alia*, Garrett's history of risk taking, impulsivity, substance use difficulties, and anger management problems, and concluded that none of these factors were present in Garrett's history or present behavior. Dr. Kartye

discussed several "protective factors" present that mitigate the effects of risk factors for violent behavior. These factors include Garrett's church attendance, strong family support, strong attachment bonds to family members, positive attitude toward authority, and that he is compliant with his medication regimen and therapy when he was receiving them.

Dr. Kartye administered the Psychiatric Diagnosis Screening Questionnaire (PDSQ), which showed that Garrett was not showing significant psychiatric symptoms (such as hearing voices or delusions). Dr. Kartye previously administered the Personality Assessment Inventory (PAI) during the 2011 evaluation and again during the 2016 evaluation. The results from his 2011 and 2016 assessment indicate stable personality functioning within normal ranges.

Ultimately, Dr. Kartye concluded that the possibility of Garrett's future dangerous behavior continues to be "extremely low," as evidenced by the absence of violent behavior (prior to the 2011 evaluation to present time).

### III. DISCUSSION

A person shall be discharged when "his release would no longer create a substantial risk of injury to another person and or serious damage to the property of another," and that a person shall be *conditionally* released when the status described above can only be achieved "under a prescribed regimen of medical, psychiatric or psychological care or treatment." 18 U.S.C. § 4243(f).

The person found not guilty by reason of insanity has the burden of proving that no such substantial risk exists by either clear and convincing evidence or by a preponderance of the evidence, depending upon the nature of the offense which the person was acquitted. See 18 U.S.C. § 4243(d).

Garrett's examining psychologist, Dr. Joseph Kartye, recommends that Garrett be granted an unconditional release. The Government did not proffer evidence to the contrary, and did not oppose

Garrett's request to be unconditionally discharged.

## IV. RECOMMENDATION

For the reasons set forth above and documented in Dr. Kartye's psychological evaluation report, the undersigned recommends unconditional discharge under 18 U.S.C. § 4243(f) because Garrett has shown by clear and convincing evidence that his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another. Furthermore, the only evidence submitted at the hearing compels this conclusion under 18 U.S.C. § 4243(f)(1). There is no evidence before the court to justify the continuation or modification of his conditional release. Accordingly, the undersigned recommends that the Defendant, Byron Garrett, be unconditionally discharged under 18 U.S.C. § 4243(f), and his case be administratively closed.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. Parties are typically allowed fourteen days to file objections. However, considering the ultimate outcome of this matter, the undersigned feels that the objection period should be reduced from fourteen (14) days to seven (7). At the hearing, the parties orally agreed to reduce the objection period from fourteen (14) days to seven (7).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, see Rodriguez v. Bowen, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings

of fact and conclusions of law accepted by the United States District Judge, see <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 10th day of January, 2017.

_____
Zack Hawthorn
United States Magistrate Judge